IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50186
_____


UNITED STATES OF AMERICA

                                        Plaintiff-Appellee,

                    versus


JORGE HERNANDEZ-AVALOS

                                        Defendant-Appellant.
_____

Appeal from the United States District Court for the
                Western District of Texas
_____

May 11, 2001

Before JOLLY, MAGILL[*] and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    Jorge Hernandez-Avalos ("Hernandez") appeals his conviction
for unlawfully reentering the United States after having been
removed.  See 8 U.S.C. § 1326.  Hernandez contends that the
unlawful reentry indictment should have been dismissed because the
earlier removal proceeding was fundamentally unfair because he was
incorrectly removed as an "aggravated felon."  He argues that the
unfairness stems from the fact that although his conviction was a

_____

    [*]Circuit Judge of the Eighth Circuit, sitting by designation.

1

felony under Colorado law, it was not considered a felony under federal law. Because we do not agree that the removal proceeding was fundamentally unfair, we affirm his conviction.

I

In February 1999, Hernandez, a citizen of Mexico, pleaded guilty in a Colorado court to one count of possession of heroin, a class three felony punishable under the laws of Colorado by up to twelve years in prison. See COLO. REV. STAT. ANN. §§ 18-18-203, 18-18-405, 18-1-105. A notation on the judgment of conviction suggests that one of the terms of the plea agreement was that Hernandez would "cooperate with [the] INS." The Colorado state court sentenced Hernandez to ninety days' imprisonment followed by six years' probation.

On March 24, 1999, the Immigration and Naturalization Service ("INS") commenced removal proceedings against Hernandez. The "Notice of Intent to Issue a Final Administrative Removal Order" informed Hernandez that his Colorado drug conviction qualified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43). It further informed him that because he had been convicted of an aggravated felony, he was (1) deportable under 8 U.S.C. 1227(a)(2)(A)(iii); (2) subject to expedited administrative removal proceedings under 8 U.S.C. § 1228(b) without a hearing before an immigration judge; and (3) ineligible for any discretionary relief from removal pursuant to 8 U.S.C. § 1228(b)(5). The notice also advised

Hernandez of his rights to obtain free legal services and to seek judicial review of a final administrative order within fourteen days unless he waived his right to appeal. The form indicates that an interpreter explained these provisions in Spanish.

Also on March 24, Hernandez signed a waiver (written in Spanish) stating that he did not dispute the INS's factual findings, that he waived his right to a hearing, that he consented to his removal to Mexico, and that he waived his right to seek judicial review of the removal order. The INS issued a "Final Administrative Removal Order," and Hernandez was then removed to Mexico (through El Paso, Texas) on March 30, 1999.

Three days later, on April 2, Hernandez was arrested in El Paso by border patrol agents. The instant indictment followed, which charged him with unlawfully reentering the United States after previously having been removed, in violation of 8 U.S.C. § 1326(a). Because Hernandez was considered an aggravated felon, the government sought enhanced penalties under section 1326(b). Although the maximum length of imprisonment under section 1326(a) is two years, an alien "whose removal was subsequent to a conviction for commission of an aggravated felony" may be sentenced to twenty years in prison. 8 U.S.C. § 1326(b)(2).

Hernandez filed a motion to dismiss the indictment on the grounds that the earlier removal proceeding upon which the indictment was predicated violated due process of law.

3

Specifically, Hernandez argued that he had not been deportable under the aggravated felony provision because his Colorado conviction for simple heroin possession would not have been considered a felony under analogous federal drug laws. The district court denied Hernandez's motion to dismiss, relying on this court's decision in United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997) (holding that a state drug conviction that is a felony under state law constitutes an "aggravated felony" for the purpose of the Sentencing Guidelines).

Following a bench trial on stipulated facts, Hernandez was convicted of unlawfully reentering the United States. The court granted Hernandez's request for a downward departure and sentenced him to thirty months' imprisonment and three years' supervised release. Hernandez now appeals.

II

A

The sole issue before this court is whether Hernandez's instant conviction for illegal reentry must be vacated because of flaws in the earlier removal proceeding.[1] We review *de novo*

---

[1]Hernandez has raised an Apprendi issue with respect to his sentence, but he does so for the sole purpose of preserving the question for possible review by the United States Supreme Court. As noted above, section 1326(b)(2) provides that the maximum prison term may be increased from two years to twenty years if the alien has been removed "subsequent to a conviction for commission of an aggravated felony." Because the fact of his prior drug conviction was not alleged in the indictment, Hernandez contends that his thirty-month prison term exceeded the statutory maximum. Hernandez concedes (as he must) that his argument is directly contrary to

4

Hernandez's due process challenge to his conviction.  See United States v. Estrada-Tochez, 66 F.3d 733, 735 (5th Cir. 1995).

To successfully collaterally attack an earlier removal order, which serves as an element of an offense under 8 U.S.C. § 1326, an alien must establish that (1) the prior hearing was fundamentally unfair; (2) the hearing effectively eliminated the alien's right to seek judicial review of the removal order; and (3) the procedural deficiencies caused the alien actual prejudice.  See United States v. Lopez-Vasquez, 227 F.3d 476, 483 (5th Cir. 2000)(citing United States v. Mendoza-Lopez, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)).

B

Our analysis begins and ends with the question whether the removal proceeding was fundamentally unfair in the sense that it resulted in "a denial of justice" or of due process of law. Animashaun v. INS, 990 F.2d 234, 238 (5th Cir. 1993).

The crux of this case is the meaning of "aggravated felony," which is defined in the Immigration and Nationality Act ("INA") to include "illicit trafficking in a controlled substance . . . ,

_____

Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 118 S.Ct. 1219, 1222, 140 L.Ed.2d 350 (1998), which held that a prior conviction is a mere sentencing factor.  While it has been suggested that Almendarez-Torres may be inconsistent with Apprendi v. New Jersey, 520 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Almendarez-Torres is nevertheless binding on the lower federal courts.  See, e.g., State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 284, 139 L.Ed.2d 199 (1997)("[I]t is this Court's prerogative alone to overrule one of its precedents.").

5

including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). In section 924(c), the term "drug trafficking crime" includes "*any felony punishable under the Controlled Substances Act* (21 U.S.C. § 801 et seq.). . . ." 18 U.S.C. § 924(c)(2)(emphasis added).

In United States v. Hinojosa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997), we interpreted this definition from section 924(c) to mean that a state drug conviction is a "drug trafficking crime" (and thus an aggravated felony) if "(1) the offense was punishable under the Controlled Substances Act and (2) it was a felony" under either state or federal law. Five other circuits have reached the same conclusion. See United States v. Restrepo-Aquilar, 74 F.3d 361, 364-66 (1st Cir. 1996); United States v. Polanco, 29 F.3d 35, 38 (2d Cir. 1994); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997); United States v. Cabrera-Sosa, 81 F.3d 998, 1000 (10th Cir. 1996); United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999); see also Steele v. Blackman, 236 F.3d 130, 136 & n.5 (3d Cir. 2001)(dicta).

Applying Hinojosa-Lopez to the facts of this case, we conclude that Hernandez's Colorado drug conviction is a "drug trafficking crime" and, therefore, an "aggravated felony" within the meaning of the applicable statutes because (1) Hernandez's heroin possession offense is clearly punishable under the Controlled Substances Act, see 21 U.S.C. § 844(a); 21 U.S.C. § 812(c), Schedule I (b)(10); and

(2) as noted above, possession of heroin is a class three felony under Colorado law.

In sum, based on our interpretation of the relevant statutes, we believe Congress intended that state drug convictions such as Hernandez's be included in the definition of "aggravated felony" and that aliens in Hernandez's situation be expeditiously removed pursuant to section 1228. Therefore, we cannot say that Hernandez's removal through expedited administrative proceedings constitutes "a denial of justice" or was otherwise unfair.

C

Hernandez, however, has raised two arguments that must be addressed.

First, Hernandez suggests that the fundamental unfairness arose when the INS agents failed to follow Board of Immigration Appeals ("BIA") precedents interpreting the "aggravated felony" statutes. The BIA has interpreted the relevant language from section 924(c) -- "any felony punishable under the Controlled Substances Act" -- to mean that a drug offense must be punishable *as a felony* under the provisions of the Controlled Substances Act in order to qualify as an aggravated felony. See In re L-G-, 1995 WL 582051 (BIA)("A federal, not a state, definition applies to determine whether or not a state drug offense is a 'felony' within the meaning of 18 U.S.C. § 924(c)(2), and therefore is an 'aggravated felony' under section 101(a)(43) of the Act."). If the

INS officials had properly applied BIA precedent at the time they removed Hernandez, see 8 C.F.R. § 3.1(g), they would have determined that Hernandez's Colorado drug conviction for simple possession of a small amount of heroin would not have been considered a felony under analogous provisions of the Controlled Substances Act, see 21 U.S.C. § 844(a), and they would not have subjected him to the expedited administrative removal proceedings.[2]

There can be no doubt that the INS officials who conducted the removal proceeding did not follow BIA precedent. However, if we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case

---

[2]If a circuit court's interpretation of "aggravated felony" is different from the BIA's interpretation, the INS is bound by the decisions of the circuit court in removal proceedings "arising in" that circuit. In re L-G, 1995 WL 582051 (BIA). Consequently, the BIA's interpretation should have been applied in Hernandez's case unless the decisions of the Tenth Circuit (the circuit in which the removal proceeding arose) had dictated otherwise. At the time of Hernandez's removal, the Tenth Circuit (like the Fifth) had held that a drug conviction is an aggravated felony if the offense was punishable under federal drug laws and it was considered a felony under either state or federal law. See Cabrera-Sosa, 81 F.3d at 1000. However, Cabrera-Sosa involved the application of the Sentencing Guidelines, and the BIA insists that the interpretation of section 924(c) depends upon whether "aggravated felony" is being applied in sentencing or in the immigration context. In re K-V-D-, 1999 WL 1186808 (BIA). Thus, the INS agents were not bound to follow Cabrera-Sosa's interpretation of "aggravated felony" in Hernandez's case. As will be discussed below, we believe the BIA's distinction between sentencing and immigration cases is incorrect.

8

requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law.[3]

Second, Hernandez argues that Hinojosa-Lopez and the other circuits' decisions interpreting section 924(c) are not relevant here because they arose under the Sentencing Guidelines. The BIA's current rule is that section 924(c) must be interpreted differently in immigration cases. See In re K-V-D-, 1999 WL 1186808 (BIA). Only the Second Circuit has addressed this contention, and it agreed with the BIA. See United States v. Pornes-Garcia, 171 F.3d 142, 147 (2d Cir.), cert. denied, 120 S.Ct. 191 (1999); Aguirre v. INS, 79 F.3d 315, 317 (2d Cir. 1996).

We fail to see the validity of interpreting this statute differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each

---

[3]Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes. Cf. Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 & n.9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)(citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

instance. Indeed, the BIA and Second Circuit decisions are predicated less on their reading of the statutory language than on the perceived need for a uniform, substantive standard -- at least in the deportation context -- for determining whether a drug offense qualifies as an "aggravated felony." But this argument for uniformity is not altogether persuasive inasmuch as it creates a dichotomy -- not uniformity -- between the BIA's application of section 924(c) in removal proceedings and the federal courts' application of section 924(c) in sentencing proceedings, even though both proceedings serve a parallel purpose of imposing greater consequences for serious drug offenses.

More important to our decision, however, is that the statutory language is clear -- and is the same -- whether applied in sentencing or immigration cases. We agree that the plain language of the statutes "indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the [Controlled Substances Act]," Briones-Mata, 116 F.3d at 310, and that the lack of a uniform substantive test for determining which drug offenses qualify as "aggravated felonies" "is the consequence of a deliberate policy choice by Congress" that the BIA and the courts cannot disregard. Restrepo-Aguilar, 74 F.3d at 366. We are therefore unpersuaded by the BIA's and Second Circuit's approach to interpreting the identical statutory term differently depending

10

upon whether the case involves sentencing or immigration.

III

Although we recognize that the INS officials may have made mistakes under BIA rulings in conducting Hernandez's removal proceedings, we cannot ignore the fact that the relevant statutes -- when properly interpreted -- express Congress's intent that aliens with drug convictions that are felonies under state law should be removed under expedited administrative proceedings. Under these circumstances, we hold that the earlier removal proceeding was not "fundamentally unfair" and that the indictment for unlawful reentry should not be dismissed as a violation of due process of law. The judgment of the district court is therefore

A F F I R M E D .

11