REVISED - September 13, 2001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 99-51199
_____


UNITED STATES OF AMERICA

      Plaintiff - Appellee

   v.

MOISES CHAPA-GARZA, also known as Moises Garza, also known
as Moises Garza Chapa, also known as Moises G Chapa, also
known as Moises Chapa

      Defendant - Appellant
_____

No. 00-50049
_____


UNITED STATES OF AMERICA

      Plaintiff - Appellee

   v.

JULIAN RICARDO GOYTIA-CAMPOS, also known as Julian Ricardo
Goitia-Campos

      Defendant - Appellant
_____

No. 00-50051
_____


UNITED STATES OF AMERICA

      Plaintiff - Appellee

v.

ALFONSO GUADALUPE PEREZ-VELAZQUEZ, also known as Erick Lee

Defendant - Appellant

_____

No. 00-50107
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

FRANCISCO JAVIER SALDANA-ROLDAN

Defendant - Appellant

_____

No. 00-50239
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

EPIFANIO IVARBO-MARTELL, also known as El Chino

Defendant - Appellant

---------------------
Appeals from the United States District Court for the
Western District of Texas, San Antonio
---------------------
August 20, 2001

ON PETITION FOR REHEARING EN BANC

(Opinion March 1, 2001,  5 Cir., 2001, _____ F.3d _____ )

Before GOODWIN*, GARWOOD, and JONES, Circuit Judges.

PER CURIAM:

(  )  Treating the Petition for Rehearing En Banc as a Petition
for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No
member of the panel nor judge in regular active service of the court
having requested that the court be polled on Rehearing En Banc
(FED. R. APP. P. and 5th Cir. R. 35), the Petition for Rehearing En Banc
is DENIED.

(X)  Treating the Petition for Rehearing En Banc as a Petition
for Panel Rehearing, the Petition for Panel Rehearing is DENIED.  The
court having been polled at the request of one of the members of the
court and a majority of the judges who are in regular active service
not having voted in favor (Fed. R. App. P.  and 5th Cir. R. 35), the
Petition for Rehearing En Banc is DENIED.

   Judge Stewart did not participate.

_____

*

   Circuit Judge of the Ninth Circuit, sitting by designation.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting from denial of rehearing en banc:[*]

Last March, in **United States v. Chapa-Garza**, our court held — in my view, erroneously — that Texas *felony* DWI (at least three DWI convictions) is not a "crime of violence" within the meaning of 18 U.S.C. § 16(b) and, therefore, not an "aggravated felony" for sentence-enhancement purposes. 243 F.3d 921 (5th Cir. 2001). This being an issue of exceptional importance, I respectfully dissent from our court's refusal to consider this case en banc.

I.

**Chapa-Garza** began by distinguishing the definition of criminal violence in § 16(b), which applies to sentencing of aliens, from that found in U.S.S.G. § 4B1.2, which describes career offenders. **Chapa-Garza**, 243 F.3d at 925-26. Central to its holding was: the language of § 16(b) contemplates an intentional use of force; and such force is that used to effectuate the crime itself. **Id.** at 926-27 ("[W]e ... hold ... that a crime of violence as defined in 16(b) requires recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the crime".).

_____

[*]Edith H. Jones, Circuit Judge, concurs in this dissent to the extent that the difficulty of statutory construction in this case and the far-reaching significance of the panel decision should have motivated our court to rehear this case en banc.

I respectfully submit that *Chapa-Garza* reached the wrong result. In any event, the correct result is a close call. The gravity of the issue is enhanced greatly by the fact that, although the issue arose in this appeal in the context of sentencing, the same statutory definitions arise in the civil immigration context in determining whether an alien with a conviction for felony DWI is removable. Therefore, I dissent from the denial of rehearing en banc primarily because whether felony DWI is an "aggravated felony" is an issue of exceptional national importance, affecting hundreds if not thousands of aliens. *See* FED. R. APP. P. 35(a) (rehearing en banc may be ordered to secure uniformity in court's decisions or when proceeding involves question of exceptional importance). The attention this issue has recently received, the exacerbation of the circuit split since *Chapa-Garza* was rendered, and the action taken by the Board of Immigration Appeals (BIA) in response to *Chapa-Garza* highlight the importance of the issue.

Early this year, prior to *Chapa-Garza*, the Tenth Circuit held not unreasonable the BIA's conclusion that felony DWI is a crime of violence under § 16(b) and, therefore, an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). *Tapia Garcia v. INS*, 237 F.3d 1216 (10th Cir. 2001); *cf. Camacho-Marroquin v. INS*, 188 F.3d 649 (5th Cir. 1999) (felony DWI is "crime of violence" under § 16(b)), *withdrawn*, *rehearing dismissed by* 222 F.3d 1040 (5th

5

Cir. 2000). *Compare* **Le v. U.S. Att'y Gen.**, 196 F.3d 1352, 1354 (11th Cir. 1999) (holding conviction for causing serious bodily injury while driving under the influence is "crime of violence" within § 16(a) because one element of offense is actual use of physical force, and declining to address scope of § 16(b)).

Following **Chapa-Garza**, three circuits have addressed the *mens rea* requirement of § 16(b), exacerbating the circuit-split. The Second Circuit held a felony DWI conviction under New York law does not constitute a crime of violence under § 16(b) for removal purposes. **Dalton v. Ashcroft**, No. 00-4123, 2001 WL 822454 (2d Cir. 20 July 2001); *but see* **id.** at *7 (Walker, C.J., dissenting) (New York felony DWI is crime of violence within § 16(b)). The Seventh Circuit, relying on **Chapa-Garza**, held DWI is not a crime of violence under § 16(b) for removal purposes because it does not involve the intentional use of force. **Bazan-Reyes v. INS**, No. 99-3861, 2001 WL 748157 (7th Cir. 5 July 2001). The Ninth Circuit held a reckless *mens rea* is sufficient to constitute a crime of violence under § 16(b), and, therefore, involuntary manslaughter is a "crime of violence". **Park v. INS**, 252 F.3d 1018 (9th Cir. 2001). Yet even more recently, the Ninth Circuit has held that, although § 16(b) encompasses both intentional and reckless conduct, because California DWI can be committed by mere negligence, it is not a crime of violence within § 16(b). **United States v. Trinidad-Aquino**, No. 00-10013,

2001 WL 883719 (9th Cir. 8 Aug. 2001); *but see* ***id.*** at *6-7 (Kozinski, J., dissenting) (majority's conclusion is contrary to law of circuit and common sense).

Moreover, ***Chapa-Garza*** stands in the way of the uniform implementation of our country's immigration laws. Recently, in the light of ***Chapa-Garza*** and ***United States v. Hernandez-Avalos***, 251 F.3d 505 (5th Cir. 2001), discussed *infra*, the BIA decided to no longer remove from the Fifth Circuit those convicted of felony DWI. ***In re Olivares***, 23 I&N Dec. 148 (BIA 2001).

II.

A.

***Chapa-Garza*** interprets § 16(b) erroneously. This is in large part due to its failure to consider the underlying law of Texas concerning what constitutes felony DWI in that State.

1.

In reaching the wrong result, ***Chapa-Garza*** noted the differences between the language of § 16(b), defining a crime of violence for purposes of sentencing under U.S.S.G. § 2L1.2 for unlawful entry, and U.S.S.G. § 4B1.2, defining a career offender. The difference, however, does not necessarily lead to distinct results in their application.

Section 16(b) defines a crime of violence as

> any other offense that is a felony and that,
> *by its nature*, involves a *substantial risk*
> that *physical force* against the person or

7

> property of another *may be used in the course of committing* the offense.

(Emphasis added.) Section 4B1.2 defines a crime of violence as, *inter alia*,

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – ... is *burglary of a dwelling*, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

(Emphasis added.)

*Chapa-Garza* contrasts § 4B1.2(a)(2)'s reference to a *risk of injury* to § 16(b)'s mention of a *risk of force*. *Chapa-Garza*, 243 F.3d at 925. This distinction is immaterial, because it merely distinguishes the cause from the effect. An injury would only result from the use of force (be the application of force intentional, reckless, unintentional), and the use of force could result in injury. *But see Dalton*, 2001 WL 822454, at *5 (distinguishing "risk of injury" and risk of the "use of physical force", reasoning "[t]here are many crimes that involve a substantial risk of injury but do not involve the use of force").

In my view, *Chapa-Garza*, in parsing the language of § 16, overlooks the common-sense understanding of that language. *But see, e.g., Bazan-Reyes*, 2001 WL 748157, at *5-10 (comparing language of § 16(b) and § 4B1.2(1)). Of course, principles of statutory interpretation counsel reading the statute as a whole,

8

so that each word has meaning.  The opinion is correct that "by its nature" requires looking at the offense categorically. *Chapa-Garza*, 243 F.3d at 924.  But, the language "substantial risk" suggests a state of mind of recklessness and cuts against interpreting the language as referring to intentional conduct, because it connotes something that may occur accidentally, not something that is necessary to effectuate the offense.

*Chapa-Garza,* however, looked to a dictionary definition of "use" to conclude that § 16(b) refers to intentional conduct. *Id.* at 926.  Such a definition belies the common-sense usage of the word in § 16(b).  It is true that "use" may more often refer to the intentional, rather than the accidental, use of force; but, without question, force may be used accidentally.[2]  Although many precedent assume "use" refers to an intentional act, our court has interpreted § 16(b) to include both accidental and intentional uses of force.  *See United States v. Galvan-Rodriguez*, 169 F.3d 217 (5th Cir.), *cert. denied*, 528 U.S. 837 (1999) (concluding one reason unauthorized use of vehicle is "crime of violence" under § 16(b) is risk physical force may accidentally be used during operation of vehicle, not solely because physical force may be applied intentionally).  Force may

---

[2]Webster's list of synonyms specifies "USE is general and indicates any putting to service of a thing, *usu.* for an intended or fit purpose".  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (Merriam-Webster 1986).  This suggests, of course, that a purpose is not always intended.

be "used" — "employed" — without a specific purpose in mind.[3]  In fact, the words "substantial risk" in § 16(b) suggest a lack of intentionality, for a risk is something that the actor hopes will not, but may, happen.  Moreover, it is not immediately clear what other word Congress would have employed to encompass the unintentional application of force:  "substantial risk that physical force ... may be _____ in the course of committing the offense".  *But see* **United States v. Rutherford**, 54 F.3d 370, 372-73 (7th Cir.) ("A drunk driver who injures a pedestrian would not describe the incident by saying he 'used' his car to hurt someone.  In ordinary English, the word 'use' implies intentional availment."), *cert. denied*, 516 U.S. 924 (1995).  *Compare* U.S.S.G. § 4B1.2(a)(2) ("involves conduct that").

The holding that § 16(b) requires "*recklessness* as regards the substantial likelihood that the offender will *intentionally* employ force", **Chapa-Garza**, 243 F.3d at 927 (emphasis added), is less than clear.  "[I]ntentionally employ" is substituted for the statute's "use".  How can a person be "reckless" regarding whether he will do something "intentionally"?  In the continuum of states of mind, negligence, recklessness, and intentionality

---

[3]Even the Seventh Circuit in **Bazan-Reyes** used a word synonymous with "use" to state its holding that specific intent was not required:  "[W]e hold that the language of sec. 16(b) simply does not support a finding that a risk that one object will *apply* force to another is enough to constitute a crime of violence under the statute".  2001 WL 748157, at *10 (emphasis added).

10

are, of course, distinct.  Once the DWI offense begins, the question is no longer whether force will be needed to effectuate the offense but, rather, whether it will be used accidentally (recklessly) during the commission of the offense.  The definition employed in **Chapa-Garza**, replacing "use" with "intentional use", is particularly troubling in the context of DWI, which is criminalized not because of what the driver intends to do (operate a vehicle while intoxicated) but rather because of the unintended consequences of that action (great risk to people and property).  *Cf.* **Trinidad-Aquino**, 2001 WL 883719, at *7 (Kozinski, J., dissenting) ("reckless conduct — drinking and driving — causes the negligence and turns a civil tort into a criminal offense").

An analogy to burglary of a dwelling (a "crime of violence" under § 4B1.2), as in **United States v. Parson**, 955 F.2d 858 (3d Cir. 1992), quoted by **Chapa-Garza**, 243 F.3d at 926, is not helpful:  the dangers to people and property from burglary of a dwelling arise from intentional acts, while in DWI they result from unintentional acts.  In fact, **Chapa-Garza** quoted from **Parson** explaining that "a drunk driver risks causing severe injury to others on the road or in the car, but in most cases he or she does not intend to use force to harm others".  **Chapa-Garza**, 243 F.3d at 926 (quoting **Parson**, 955 F.2d at 866).  In one key way burglary of a dwelling and DWI are analogous:  the actual use of

11

force is neither an element of burglary nor of DWI. *See **United States v. Rodriguez-Guzman***, 56 F.3d 18, 20 (5th Cir. 1995) ("To obtain a conviction under ... Texas burglary statutes, the state need not prove the use, attempted use, or threatened use of physical force against the person or property of another." (citing ***Clark v. State***, 667 S.W.2d 906 (Tex. Ct. App. 1984) (building); ***Richardson v. State***, 888 S.W.2d 822 (Tex. Cr. App. 1994) (vehicle).[4]  It can be reasonably inferred from the nature of both that the offender could foresee the substantial risk of potential use of force during the commission of either burglary or felony DWI.

In addition, the conclusion that the offender must intentionally use force contravenes our court's practice "not [to] presume that a statutory crime requires specific intent in the absence of language to that effect". ***United States v. Myers***, 104 F.3d 76, 81 (5th Cir.), *cert. denied*, 520 U.S. 1218 (1997).

2.

The Texas Penal Code provides:  "A person commits an offense if the person is intoxicated *while operating* a motor vehicle in a public place."  TEX. PENAL CODE § 49.04(a) (Supp. 1999) (emphasis added).  "If it is shown on the trial of an offense under Section

---

[4]*But see **Dalton***, 2001 WL 822454, at *3 ("[W]e conclude that not all [New York felony DWIs] are 'by their nature' 'crimes of violence' because risk of physical force is not a requisite element of the New York DWI offense.").

12

49.04 ... that the person has previously been convicted two times of an offense relating to the operating of a motor vehicle while intoxicated, ... the offense is a felony of the third degree." TEX. PENAL CODE § 49.09(b).

In an extremely important ruling, which appears to be at odds with the plain wording of the underlying Texas DWI statute ("while operating"), *Chapa-Garza* states that DWI is committed at the time the defendant begins driving. *Chapa-Garza*, 243 F.3d at 927. I respectfully submit that, especially pursuant to the intent and wording of § 16(b) and in keeping with the Texas DWI statute, DWI is instead a continuum. Once he has begun to operate the vehicle, an individual is guilty of DWI; but, the offense continues as long as he continues driving ("while operating") the vehicle. Needless to say, the driver is subject to arrest while he is driving the vehicle.

*Chapa-Garza* cites *no* authority to support its ruling that DWI merely involves beginning operation of the vehicle. Again, and as quoted *supra*, the phrase "while operating" is used in the Texas DWI statute. Along this line, Texas courts have defined "operating" as "exert[ing] personal effort upon [a] vehicle in a manner that shows intentional use of the vehicle for its intended purpose" and "affect[ing] the functioning of a vehicle in a manner that would enable the vehicle's use". *Barton v. State*, 882 S.W.2d 456, 459 (Tex. Ct. App. 1994). A driver exerts

13

personal effort not only when he begins operation of the vehicle but also "while" he operates it.

3.

Also, *Chapa-Garza* construed § 16(b)'s phrase "in the course of committing the offense" to refer to the force necessary *to* effectuate the offense. *Chapa-Garza*, 243 F.3d at 927. A more common-sense understanding would be that the phrase also encompasses the force used while effectuating the offense (*i.e.*, while driving). Such an interpretation is particularly reasonable in the context of drunk driving: First, as mentioned, a DWI offense continues as long as the person is operating the vehicle; the risk that physical force will be used against the person or property of another while the offense is being committed is obvious. Second, it can be reasonably inferred from the nature of the offense of drunk driving that the offender could foresee the potential use of force during the commission of the crime, even if not necessary to effectuate the crime itself. Third, as mentioned, the primary reason DWI has been criminalized is to protect others and their property from damage perpetrated by the drunk driver.

4.

Finally, even if legislative history may suggest that DWI does not automatically fall within the category of a crime of violence, it must be remembered that the DWI at issue is

14

*felony* DWI.  The seriousness of the crime and of the risk of violence is obvious in that, as noted *supra*, a DWI felony conviction in Texas is at least the *third* DWI offense committed by the defendant.  TEX. PENAL CODE § 49.09(b).  It goes without saying that someone who has been arrested at least three times for driving while intoxicated presents a real and great risk.  *See* **Dalton**, 2001 WL 822454, at *8 (Walker, C.J., dissenting) ("[T]hat the offense [of felony DWI in New York] requires two prior drunk driving convictions increases the attendant risk.").  In other words, while it may be that not every DWI is a crime of violence under § 16(b) (an issue not at hand), a felony DWI certainly is.

B.

Even assuming the **Chapa-Garza** is correct, it is a very close call.  For example, the Government is correct in asserting that, although it is *dictum*, our court in **Galvan-Rodriguez** made it clear that one of the reasons the unauthorized use of a vehicle is a "crime of violence" under § 16(b) is the risk that physical force may accidentally be used during the operation of the vehicle, not solely because physical force may be applied intentionally to obtain access to the vehicle.  169 F.3d at 219.  Although this *dictum* in itself does *not* create disuniformity in the law, it indicates that the issue of what constitutes a crime of violence is complicated enough to merit en banc review.  On

15

top of this, the issue at hand is unquestionably of exceptional importance.    The sentencing enhancement at issue involves an increase from a statutory maximum of two years to 20 years.  *See* 8 U.S.C. § 1326(a)(2), (b)(2).  This increase is for a good reason.  That drunk driving is an extremely serious offense is evidenced statistically:  As of 1990, drunk drivers annually caused over 25,000 deaths, approximately one million personal injuries, and more than $5 billion in property damages.  ***Michigan State Police v. Sitz***, 496 U.S. 444, 451 (1990).  A more recent study estimated that 2.6 million drunk driving crashes each year victimize four million innocent people who are injured or have their vehicles damaged.  Statistics: General Statistics, *available at* http://www.madd.org/stats/stat_gen.SHTML (last visited 14 Aug. 2001).  In 1999, seven percent of traffic accidents were alcohol-related but 40 percent of traffic fatalities were.  *Id.*

In addition, and as noted, the same statutory definitions arise in determining whether an alien convicted for felony DWI is removable.  The removal of aliens convicted of "aggravated felonies" is provided for by 8 U.S.C. § 1227(a)(2)(A)(iii); that section refers to the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), the same section referenced by the guideline at issue for the case at hand, U.S.S.G. § 2L1.2.  Section 1101(a)(43)(F) in turn references the definition of

16

"crime of violence" found in 18 U.S.C. § 16.  In Texas alone, the INS has removed thousands of aliens convicted of felony DWI and approximately 500 such cases are pending before the Board.

As noted, both the Seventh and Second Circuits have vacated removal orders by holding a felony DWI is not a crime of violence within § 16(b).  *Dalton*, 2001 WL 822454; *Bazan-Reyes*, 2001 WL 748157.  Our precedent would likely require us to do the same, extending our interpretation of § 16(b) to apply to removal proceedings as well as to sentencing.  In *Hernandez-Avalos*, our court found cases arising in the criminal context relevant to immigration and removal.  251 F.3d at 509.  *Hernandez-Avalos* then stated:

> We fail to see the validity of interpreting this statute differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance.

*Id*.

Previously, the BIA had concluded that Texas felony DWI is a crime of violence under § 16(b) and therefore an aggravated felony under § 1101(a)(43)(F).  *See Matter of Puente-Salazar*, Interim Dec. 3412 (BIA 1999).  Recently, as noted, the BIA, recognizing the likelihood the interpretation of § 16(b) for purposes of sentencing would be extended in our circuit to removal proceedings as well, declined to apply *Matter of Puente-*

17

***Salazar*** to removal cases arising in our circuit.  ***In re Olivares***,

23 I&N Dec. 148 (relying on ***Hernandez-Avalos***).

### III.

For these reasons, this case demands en banc review.  I

respectfully dissent from our court's refusing to do so.