Jesus Aaron **CAZAREZ–GUTIERREZ,**
**Petitioner,**

v.

John **ASHCROFT, Attorney**
**General, Respondent.**

No. 02–72978.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Filed Jan. 26, 2004.

---

Jose A. Bracamonte, Law Office of Jose A. Bracamonte, Phoenix, AZ, for the petitioner-appellant.

Anthony Payne, U.S. Department of Justice, Civil Division, Washington, DC, for the respondent-appellee.

Before HUG, B. FLETCHER, and TASHIMA, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Petitioner Jesus Aaron Cazarez–Gutierrez ("Cazarez–Gutierrez") appeals the decision of the Board of Immigration Appeals ("BIA" or "Board") finding him statutorily ineligible for cancellation of removal because he was convicted of the "aggravated felony" of a "drug trafficking crime." Cazarez–Gutierrez argues that his state felony conviction for possession of methamphetamine, which would be a misdemeanor if prosecuted under federal law, should not be classified as an aggravated felony for immigration purposes. We grant the petition and remand to the BIA.[1]

## I. BACKGROUND

Cazarez–Gutierrez is a native and citizen of Mexico. He entered the United States without inspection in 1985, but became a lawful permanent resident of the United States in 1990. His wife and oldest child are lawful permanent residents of the United States, and his youngest three children are citizens of the United States. In January 1997, Cazarez–Gutierrez was convicted by the State of Arizona of possession of methamphetamine, a felony under Arizona law for which he served two-and-a-half years in prison. *See* Ariz.Rev.Stat. Ann. § 13 3407 (West 1997). Possession of methamphetamine is punishable under the federal Controlled Substances Act ("CSA") with imprisonment of not more than one year, *see* 21 U.S.C. § 844(a), and thus is not a felony under federal law. *United States v. Arellano–Torres*, 303 F.3d 1173, 1177–78(9th Cir.2002).

In January 1999, an Immigration Judge ("IJ") found Cazarez–Gutierrez removable because of his conviction, but exercised his discretion to grant him cancellation of removal under § 240A(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C.

---

1. Cazarez–Gutierrez also argues that the BIA applied its interpretation of drug trafficking crime retroactively to his case in violation of *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Because we conclude that the BIA erred in its interpretation of the statute, we do not address this claim.

§ 1229b(a). The government appealed the decision, arguing that the IJ had abused his discretion in granting Cazarez–Gutierrez cancellation of removal. On August 30, 2002, the BIA reversed the cancellation of removal, holding that Cazarez–Gutierrez is statutorily ineligible for cancellation of removal because his conviction for possession of methamphetamine is an "aggravated felony" within the meaning of the INA, 8 U.S.C. § 1101(a)(43)(B), rendering him ineligible for relief under 8 U.S.C. § 1229b(a).[2] Petitioner timely filed this petition for review of the BIA's decision.

## II. JURISDICTION AND STANDARD OF REVIEW

### A. *Jurisdiction*

■ We have jurisdiction under 8 U.S.C. § 1252 to review final removal orders issued by the BIA. The government challenges our jurisdiction in this case, because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") divests this Court of jurisdiction to review an order of removal against aliens removable for having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C). However, this Court retains "jurisdiction to determine its jurisdiction," which includes determining whether a particular offense constitutes an aggravated felony for immigration purposes. *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1064–65(9th Cir.2003). Because the central question in this case is whether Cazarez–Gutierrez's offense was an aggravated felony, the jurisdictional question and the merits collapse into one. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000). Because we conclude that Cazarez–Gutierrez was not convicted of an aggravated felony for immigration purposes, we confirm our ju-risdiction and grant relief to Cazarez–Gutierrez.

### B. *Standard of Review*

■ The BIA's determination of purely legal questions is reviewed de novo. *Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002); *Castillo–Perez v. INS*, 212 F.3d 518, 523 (9th Cir.2000). Whether an offense is an aggravated felony under the INA is a legal question subject to de novo review. *Ye*, 214 F.3d at 1131.

## III. DISCUSSION

### A. *Statutory Framework*

A lawful permanent resident is eligible for discretionary cancellation of removal if he: (1) has been lawfully admitted for permanent residence for not less than five years; (2) has resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a). The first two elements of eligibility for cancellation of removal are not at issue. This case turns upon whether Cazarez–Gutierrez's state-court felony conviction for possession of methamphetamine is an aggravated felony for immigration purposes.

Under the INA, the term "aggravated felony" includes, *inter alia*, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). The BIA concluded that Petitioner's drug possession conviction was a drug trafficking crime under 18 U.S.C. § 924(c). "Drug trafficking crime" is defined as "any felony punishable under the

---

**2.** A dissenting Board member pointed out that Petitioner was not given notice of this new ground or given an opportunity to contest it. In light of its decision, the BIA did not consider whether the IJ's discretionary grant of cancellation of removal was an abuse of discretion.

Controlled Substances Act, the Controlled Substances Import and Export Act, or the Maritime Drug Law Enforcement Act." 18 U.S.C. § 924(c)(2). "The term [aggravated felony] applies to an offense ... whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years." 8 U.S.C. § 1101(a)(43).

## B. *Precedent*

The Ninth Circuit has not decided whether a state felony drug offense is an aggravated felony for immigration purposes if the offense is not punishable as a felony under federal drug laws[3] and contains no trafficking element. The Second and Third Circuits hold that state felony drug offenses are not aggravated felonies for immigration purposes unless the offense contains a trafficking element or is punishable as a felony under the federal laws enumerated in 18 U.S.C. § 924(c)(2).[4] *Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002); *Aguirre v. INS*, 79 F.3d 315 (2d Cir.1996). To the contrary, in the Fifth Circuit, any state offense that is a felony under state law and is punishable under the enumerated federal laws either as a misdemeanor or a felony is an aggravated felony for immigration purposes. *United States v. Hernandez–Avalos*, 251 F.3d 505 (5th Cir.2001). Our analysis is informed by the interpretations of the other courts of appeals, and we ultimately come down on the side of the Second and Third Circuits.

---

**3.** We use the phrases "punishable as a felony under federal drug laws" or simply "punishable as a felony under federal law" as shorthand for punishable as a felony under the three statutes named in the definition of drug trafficking crime.

**4.** As noted above, "aggravated felony" includes the "illicit trafficking in a controlled

## 1. *The Second and Third Circuits' approach*

Although the Second Circuit originally interpreted drug trafficking crime for immigration purposes in the same way that the term is interpreted for sentencing purposes, the *Aguirre* Court held that "the interests of nationwide uniformity outweigh our adherence to Circuit precedent" and adopted the rule that a state drug offense is an aggravated felony for immigration purposes only if it would be punishable as a felony under federal law or the crime contained a trafficking element. 79 F.3d at 317, *overruling Jenkins v. INS*, 32 F.3d 11 (2d Cir.1994). The *Aguirre* decision is short and relies primarily on the need for uniformity in immigration law, as well as deference to the BIA's then-current uniform interpretation. 79 F.3d at 317. Subsequently, the Third Circuit's *Gerbier* opinion fleshed out this reasoning, focusing on the need for national uniformity in immigration law and the legislative history of the provisions at issue. The Third Circuit concluded that an interpretation that incorporates the vagaries of state drug laws into federal immigration law "cannot be what Congress intended in establishing a 'uniform' immigration law." 280 F.3d at 312.

## 2. *The Fifth Circuit's approach*

The *Hernandez–Avalos* Court reached its conclusion by following cases interpreting the statutory definition of "drug trafficking crime" in the context of sentencing enhancement. 251 F.3d at 508(citing

substance ... including a drug trafficking crime (as defined in section 924(c) of Title 18)." Although it does not matter in application, we note that a drug offense with a trafficking element is "illicit trafficking" and a drug offense that is punishable as a felony under federal law is a "drug trafficking crime."

*United States v. Hinojosa–Lopez*, 130 F.3d 691 (5th Cir.1997)). Under the Sentencing Guidelines, anyone convicted of unlawful reentry after removal is subject to an enhanced penalty if she was previously convicted of an aggravated felony in the United States. U.S.S.G. § 2L1.2. The Sentencing Guidelines define aggravated felony with reference to the INA, 8 U.S.C. § 1101(a)(43), which in turn incorporates the definition of drug trafficking crime under 18 U.S.C. § 924(c). *See United States v. Ballesteros–Ruiz*, 319 F.3d 1101, 1103 (9th Cir.2003). As noted above, a drug trafficking crime includes any felony punishable under the CSA and two other federal drug laws. 18 U.S.C. § 924(c)(2). *Hinojosa–Lopez* concluded that "drug trafficking crime" includes any state offense that is (1) punishable under the CSA and (2) a felony, relying on the text of the definition of drug trafficking crime, the decisions of other federal courts of appeals, and commentary in the Sentencing Guidelines. 130 F.3d at 693–94.

In the sentencing context, this Court and all other federal courts of appeals that have interpreted "drug trafficking crime" have used similar reasoning and have adopted similar definitions of drug trafficking crime, encompassing any offense that is both punishable under the CSA and prosecuted as a felony. *See, e.g., United States v. Ibarra–Galindo*, 206 F.3d 1337, 1339 (9th Cir.2000); *United States v. Simon*, 168 F.3d 1271, 1272 (11th Cir.1999); *United States v. Briones–Mata*, 116 F.3d 308, 309 (8th Cir.1997); *United States v. Cabrera–Sosa*, 81 F.3d 998, 1000 (10th Cir. 1996); *United States v. Restrepo–Aguilar*, 74 F.3d 361, 364 (1st Cir.1996); *United States v. Polanco*, 29 F.3d 35, 38 (2d. Cir. 1994).

The *Hernandez–Avalos* Court questioned "the validity of interpreting this statute differently based on th[e] distinction between sentencing and immigration

cases" or "the perceived need for a uniform, substantive standard ... in the deportation context." 251 F.3d at 509. It did not apply the presumption that immigration law should be nationally uniform, concluding that the "argument for uniformity is not altogether persuasive inasmuch as it creates a dichotomy—not uniformity—between the BIA's application of section 924(c) in removal proceedings and the federal courts' application of section 924(c) in sentencing proceedings." 251 F.3d at 509. Furthermore, it did not address any other differences between the two statutory schemes that might make the reasoning of the sentencing cases inapplicable in the immigration context.

### 3. The BIA's interpretation

Emphasizing the need for nationally uniform immigration law, the BIA initially and for a long period interpreted "aggravated felony" for immigration purposes to include state drug offenses only if they would be punishable as felonies under federal drug laws or the offenses include a trafficking element. *Matter of K–V–D–*, 22 I & N Dec. 1163 (BIA 1999); *Matter of L–G–*, 21 I & N Dec. 89 (BIA 1995); *Matter of Davis*, 20 I & N Dec. 536 (BIA 1992). However, after *Hernandez–Avalos*, the BIA reversed its longstanding interpretation and now defines aggravated felony as the term is defined in the applicable circuit, adopting the rule used for sentencing enhancement where there is no circuit precedent interpreting drug trafficking crime for immigration purposes. *See In re Yanez–Garcia*, 23 I & N Dec. 390 (BIA 2002); *but cf. In re Elgendi*, 23 I & N Dec. 515, 518–19 (BIA 2002) (applying the sentencing enhancement rule in the Second Circuit notwithstanding *Aguirre* because the Board concluded that this "interpretation [i]s consistent with the Second Circuit's intuitive reading of the statute, divorced from the uniformity consider-

ations" that the Board had rejected). Because the Ninth Circuit has not ruled on this question in the immigration context, the BIA followed our sentencing enhancement cases here, holding that Cazarez–Gutierrez's drug possession conviction was an aggravated felony for immigration purposes in the Ninth Circuit.

## C. *Analysis*

■ Although the Fifth Circuit's interpretation perhaps might be the most intuitive reading of the text of the definition of "drug trafficking crime," "statutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The presumption that immigration laws should be interpreted to be nationally uniform, evidence that Congress intended uniformity, and prudential concerns lead us to reject the Fifth Circuit's analysis. Therefore, we join the Second and Third Circuits in holding that a state drug offense is an aggravated felony for immigration purposes only if it would be punishable as a felony under federal drug laws or the crime contains a trafficking element.

## 1. *National uniformity and federal preemption*

■ The primary reason for interpreting "aggravated felony" differently for removal and sentencing enhancement purposes is the strong interest in national uniformity in the administration of immigration laws.

■ "Power to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica,* 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). The *Gerbier* court, which discussed uniformity at length, made a critical point: "the policy favoring uniformity in the immigration context is rooted in the Constitution." 280 F.3d at 311. The United States Constitution provides that "Congress shall have Power To ... establish an *uniform* Rule of Naturalization." U.S. Const. art. I, § 8 (emphasis added); 280 F.3d at 311. In Federalist 32, Alexander Hamilton wrote that immigration was one of the few powers "EXCLUSIVELY delegated to the United States." The constitutional power "to establish a UNIFORM RULE of naturalization.... must necessarily be exclusive; because if each State had power to prescribe a DISTINCT RULE, there could not be a UNIFORM RULE." The Federalist No. 32 (internal quotation marks omitted).

The Supreme Court has recognized repeatedly that Congress has exclusive power over immigration. "The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. Under the Constitution the states are granted no such powers. ..." *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948) (internal citation omitted); *see also DeCanas,* 424 U.S. at 354, 96 S.Ct. 933; *United States v. Wong Kim Ark,* 169 U.S. 649, 701, 18 S.Ct. 456, 42 L.Ed. 890 (1898) ("The power, granted to Congress by the Constitution, to establish an uniform rule of naturalization, was long ago adjudged by this court to be vested exclusively in Congress.") (internal quotation marks omitted); *Chirac v. Lessee of Chirac,* 15 U.S. (2 Wheat.) 259, 268, 4 L.Ed. 234 (1817) (noting, "That the power of naturalization is exclusively in congress does not seem to be, and certainly ought not to be, controverted.").

Likewise, the Ninth Circuit has "repeatedly recognized that the immigration laws should be applied uniformly across the country, without regard to the nuances of state law." *Ye*, 214 F.3d at 1132. Importantly, in *Ye*, we interpreted "aggravated felony" for immigration purposes to achieve national uniformity, rejecting a BIA decision interpreting the aggravated felony of burglary as defined by state law. Instead we adopted a general definition that would allow for national uniformity. *Id.*, 214 F.3d at 1132–33. Similarly, in *Murillo–Espinoza v. INS*, we upheld the BIA's conclusion that state expungement of aggravated felony convictions for theft had no effect for immigration purposes, because Congress did not intend different immigration consequences for "criminals fortunate enough to violate the law in a state where rehabilitation is achieved through the expungement of records...." 261 F.3d 771, 774 (9th Cir.2001) (quoting *In re Roldan–Santoyo*, 22 I & N Dec. 512 (BIA 1999), *vacated on other grounds sub nom. Lujan–Armendariz v. INS*, 222 F.3d 728, 745–49(9th Cir.2000)).

"The INA was designed to implement a uniform federal policy, and the meaning of concepts important to its application are not to be determined according to the law of the forum, but rather require a uniform federal definition." *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir.1994) (internal quotation marks and brackets omitted) (quoting *Rosario v. INS*, 962 F.2d 220, 223–24 (2d Cir.1992)). Interpretations of the INA that vary according to state law are not permissible without plain indication that Congress intended to incorporate state variations. *Kahn*, 36 F.3d at 1414–15(holding that family ties, for the purpose of hardship relief from deportation, could not be determined with reference to whether states recognize common law marriage); *see also Paredes–Urrestarazu v. INS*, 36 F.3d 801, 810 (9th Cir.1994) (holding that the BIA properly did not give effect to California's trial diversion program, stating, "[d]eportation is a function of federal and not state law"); *Wadman v. INS*, 329 F.2d 812, 817 (9th Cir. 1964) (adopting a uniform definition of adultery).

In contrast, with respect to sentencing, the approach is just the opposite. "Under our federal system, the States possess primary authority for defining and enforcing the criminal law." *United States v. Lopez*, 514 U.S. 549, 561 n. 3, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (internal quotation marks omitted) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)); *see also United States v. Morrison*, 529 U.S. 598, 618, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000); *United States v. McCoy*, 323 F.3d 1114, 1124 (9th Cir.2003) (noting that "in the field of criminal law enforcement [ ] state power is preeminent"). Certain areas of criminal regulation are beyond Congress's reach. *See, e.g., Lopez*, 514 U.S. at 552, 115 S.Ct. 1624(holding that Congress has no power to prohibit firearm possession in school zones); *United States v. Stewart*, 348 F.3d 1132 (9th Cir.2003) (holding that Congress has no power to criminalize possession of machine guns that have not traveled in interstate commerce); *McCoy*, 323 F.3d at 1122–23 (holding that Congress has no power to prohibit mere possession of child pornography, as applied to a mother and daughter who posed nude in a family photograph not for distribution). Because states are the primary enforcers of criminal law, there is no pressing need for national uniformity in the sentencing enhancement context, and it is not surprising that the courts of appeals interpreting the Sentencing Guidelines have incorporated variations in state punishments for drug offenses. *But see United States v. Corona–Sanchez*, 291 F.3d 1201, 1205 (9th Cir.

2002) (en banc) (providing a uniform definition for "theft offense" for sentencing enhancement in an illegal reentry case, relying on the desirability of uniformity).

The Second Circuit in *Aguirre* and the Third Circuit in *Gerbier* hold the need for national uniformity paramount in defining drug trafficking crimes under the INA. In contrast, the Fifth Circuit's and BIA's approach necessarily incorporates vagaries in state law that would lead to widely divergent immigration consequences for aliens convicted of minor drug offenses in different states. The Fifth Circuit did not apply the presumption that immigration law is nationally uniform or recognize the special treatment of immigration in the Constitution.[5] We agree with the Third Circuit that "[f]undamental fairness dictates that ... aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in like manner." *Gerbier*, 280 F.3d at 311–12(quoting *Francis v. INS*, 532 F.3d 268, 273 (2d Cir.1976)). Given the strong desirability of uniformity in the application of immigration law, we should interpret immigration law to be nationally uniform absent clear indication that Congress intended otherwise. *See e.g., Kahn*, 36 F.3d at 1414–15.

### 2. Congressional intent

*We have identified nothing in the legislative history to* rebut the presumption that Congress intended uniform application of the immigration laws, and there is evidence that Congress intended the interpretation that we adopt. The Third Circuit provides a detailed account of Congress's intent that state drug offenses be aggravated felonies for immigration purposes only if they are punishable as felonies under federal law or involve a traffick-

ing element. *See Gerbier*, 280 F.3d at 304–09.

The development of the definitions of "aggravated felony" and "drug trafficking crime" in the INA shows that Congress intended a federal definition for those terms. State drug offenses that are punished as felonies under state law but as misdemeanors under federal law were not intended to be aggravated felonies for immigration purposes. The Anti–Drug Abuse Act of 1988 ("ADAA"), also called the Drug Kingpin Act, introduced the first "aggravated felony" provisions in the INA. Pub.L. No. 100–690, § 7342, 102 Stat. 4180 (1988). The Act provided, "The term 'aggravated felony' means murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." Although the discussion of the application of this amendment was sparse, before the Senate began voting on the ADAA, Senator D'Amato, a proponent of the immigration provisions of the Act, described the provisions as "focusing on a particularly dangerous class of 'aggravated alien felons,' that is, aliens convicted of murder, and drug and firearms trafficking." 134 Cong. Rec. S17301, S17318. The narrow list of serious crimes targeted, in the context of an Act with a general focus on fighting international drug cartels, suggests that the broadly-worded definition of drug trafficking was not intended to encompass minor state drug offenses with no trafficking element where they are punished as felonies under state law but as misdemeanors under federal law.

---

**5.** The Fifth Circuit followed the sentencing enhancement cases interpreting aggravated felony to incorporate state variations in the punishment of drug offenses without consideration of the important distinctions between sentencing and immigration law.

The ADAA also broadened the definition of "drug trafficking crime" under 18 U.S.C. § 924(c), which makes it a federal crime to use or carry a firearm in furtherance of a drug trafficking crime and certain other offenses. The amendment changed the definition of drug trafficking crime from "any felony in violation of Federal law involving the distribution, manufacture, or importation of any controlled substance" to the current definition, "any felony punishable under the Controlled Substances Act" and two other drug control statutes not relevant here. *Compare* 18 U.S.C. § 924(c)(2)(1982 & Supp. V 1987), *with* 18 U.S.C. § 924(c)(2).

The amendment was labeled a "clarification of definition of drug trafficking crimes in which use or carrying of firearms and armor piercing ammunition is prohibited." Pub.L. No. 100–690, § 6212, 102 Stat. 4180, 4360 (1988). Senator Biden, who was Chairman of the Senate Judiciary Committee and a principal drafter and supporter of the Act, explained that the amendment "clarifies the scope of 18 U.S.C. 924(c) and 929(a). Those statutes create offenses of using or carrying a firearm and armor piercing ammunition, respectively, in certain federal crimes including drug trafficking crimes." 134 Cong. Rec. S17360, S17363 (Section Analysis of Judiciary Comm. Issues in H.R. 5210 by Sen. Biden). The amendment was intended to make clear that "drug trafficking crime" includes "possession with intent to distribute, or attempt and conspiracy violations." *Id.; see also United States v. Contreras,* 895 F.2d 1241, 1244 (9th Cir. 1990) (noting that Congress "labeled the change a 'clarification,' indicating that it had always considered possession with intent to distribute—a felony punishable under the Controlled Substances Act—a drug trafficking crime within the meaning of section 924(c)").

This definition of "drug trafficking crime" is applied relatively narrowly in the context of defining a federal firearm offense because it applies only to federal prosecutions and only where offenders carry or use firearms in furtherance of drug crimes. Moreover, the choice of the wording "any felony punishable under" instead of "any conviction obtained under" or similar wording, which would be more straightforward in the immigration context, apparently was intended to allow for a firearm conviction related to a drug trafficking crime whether or not the drug trafficking conviction actually was obtained. There is nothing in the legislative history to suggest that Congress intended this "clarification" to dramatically widen the scope of "drug trafficking crime" to include, for example, simple drug possession punished as a felony by a state. *See Chisom v. Roemer,* 501 U.S. 380, 396, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (noting that the absence of any indication that Congress intended to make a major change in the statute can be considered as evidence that Congress did not intend the change).

When the BIA was faced with the issue of whether a state drug trafficking conviction was an aggravated felony for immigration purposes, the Board held that the language "punishable under" did not require that a conviction actually be obtained under the CSA. *Matter of Barrett,* 20 I & N Dec. 171, 175 (BIA 1990). The Board concluded that Congress did not seek "to differentiate between aliens convicted of similar drug-related offenses on the basis of whether the conviction was accomplished under state or federal law." *Id.* The Board "conclude[d] that the definition of 'drug trafficking crime' for purposes of determining drug-related 'aggravated felonies' within the meaning of the Immigration and Nationality Act encompasses state convictions for crimes analogous to offenses under the Controlled Substances

Act" and two other federal drug laws. *Id.,* 20 I & N Dec. at 177–78. Thus, the *Barrett* panel adopted what the Third Circuit refers to as the "hypothetical federal felony" rule that state convictions are "drug trafficking crimes" for immigration purposes *if they would be punishable as a felony* under federal drug laws. *See id.; see also Gerbier,* 280 F.3d at 304 (discussing *Barrett* ).

In the same year, Congress broadened the definition of aggravated felony to include "any illicit trafficking in any controlled substance" in addition to drug trafficking crimes.[6] Pub.L. No. 101–649, 104 Stat. 4978 (1990). At the same time, Congress deleted the requirement that the crime at issue be committed within the United States and added the provision that "aggravated felony includes offenses ... whether in violation of Federal or State law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years." *Id.*

It is clear from the House Judiciary Committee Report on the bill that Congress intended to codify *Barrett* with this amendment. The Committee's report states:

> Current law clearly renders an alien convicted of a Federal drug trafficking offense an aggravated felon. It has been less clear whether a state drug trafficking conviction brings that same result, although the Board of Immigration Appeals in *Matter of Barrett* (March 6, 1990) has recently ruled that it does. Because the Committee concurs with the recent decision of the Board of Immigration Appeals and wishes to end further litigation on this issue, section 1501 of H.R. 5269 specifies that drug trafficking (and firearms/de-

structive device trafficking) is an aggravated felony whether or not the conviction occurred in state or Federal court.

H.R.Rep. No. 101–681 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6553. As before, there is absolutely no evidence that Congress intended to incorporate state variations, much less worldwide variations, into the INA, but simply sought to codify the *Barrett* rule that an aggravated felony for immigration purposes includes any state drug offense that would be punishable as a felony under federal drug laws.

■ Although Congress has expanded the crimes considered to be aggravated felonies for immigration purposes substantially since 1990, it has not altered the definition of a drug trafficking crime. More specifically, Congress dramatically overhauled the INA by enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA. With these laws, Congress altered many aspects of the law of removal, singling out BIA precedents with which it disagreed. *See Yanez–Garcia,* 23 I & N Dec. at 405(Rosenberg dissenting). In particular, IIRIRA substantially broadened the definition of "aggravated felony." *St. Cyr,* 533 U.S. at 294–95 n. 4, 121 S.Ct. 2271 (2001). Nonetheless, Congress did not amend the definition of drug trafficking crime or the BIA's longstanding, nationally-uniform interpretation of that provision. Congress is presumed to be aware of an administrative interpretation of a statute and to adopt that interpretation when it reenacts a statute without changing the interpretation. *See e.g., Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

In summary, the legislative history of the definitions of "aggravated felony" and "drug trafficking crime" in the INA dem-

6. In addition, Congress added money laundering and crimes of violence for which a prison term of at least five years was imposed to the list of aggravated felonies.

onstrates that Congress did not intend to incorporate state variations in the punishment of drug offenses into immigration law. The parties do not cite to us, nor has our research uncovered, anything that would rebut the presumption that Congress intends immigration law to be nationally uniform and uniformly applied.

### 3. Inequitable consequences

Under *Hernandez–Avalos,* 251 F.3d at 505, and *Yanez–Garcia,* 23 I & N Dec. at 390, aliens convicted of mere drug possession in a state that punishes drug possession severely are ineligible for relief from removal, no matter what the hardship to the alien or her family. Furthermore, aliens are ineligible for asylum if they have been convicted of a "particularly serious crime," and all aggravated felony convictions are deemed to be particularly serious crimes. *See* 8 U.S.C. § 1158; *Kankamalage v. INS,* 335 F.3d 858, 860(9th Cir. 2003). Therefore, under the rule the BIA currently uses in most removal proceedings, a conviction for a state felony drug offense, even if it would have been a misdemeanor if punished under federal law, renders an alien ineligible for asylum, no matter how compelling her claim. Aliens lucky enough to have been convicted in a state that punishes drug offenses leniently will have much less serious consequences for their offenses.

Such an interpretation can lead to particularly inequitable results for aliens convicted of possession of a small amount of marijuana. The INA provides an exception for "a single offense involving possession for one's own use of 30 grams or less of marijuana" from the general rule that a conviction of any controlled substance offense renders an alien deportable. 8 U.S.C. § 1227(a)(2)(B)(i). An alien convicted of possession of 30 grams of marijuana for personal use in most states

would not be deportable, much less an aggravated felon, while an alien convicted in certain states would be an aggravated felon, ineligible for relief from removal. *See, e.g.,* N.D. Cent.Code § 19.03.1–23(6)(providing that possession of more than one ounce [7] of marijuana is a felony). Notwithstanding the broadly-worded definition of drug trafficking crime, "common sense rebels at the thought of classifying bare possession of a tiny amount of narcotics as a drug trafficking crime." *Ibarra–Galindo,* 206 F.3d at 1341(Canby, J., dissenting).

Furthermore, a rule that classifies state drug offenses punished as felonies under state but not federal law as aggravated felonies for immigration purposes is inequitable to aliens who committed minor drug offenses prior to 2002. When the BIA changed its interpretation of "drug trafficking crime" in reaction to the Fifth Circuit's ruling in *Hinojosa–Lopez,* 130 F.3d at 691, the dissenting Board member argued forcefully that the decision upset the longstanding understanding of the immigration consequences of minor state drug offenses, which had "been applied to literally thousands of cases." *Yanez–Garcia,* 23 I & N Dec. at 403 (Rosenberg, dissenting). Our analysis is guided by considerations of fair notice, reasonable reliance, and settled expectations. *See St. Cyr,* 533 U.S. at 291, 121 S.Ct. 2271. Aliens reasonably would have relied on the settled understanding that drug offenses are not aggravated felonies for immigration purposes unless they are punishable as felonies under federal drug laws or the crime involved a trafficking element.

█ Although harsh or inequitable consequences are not determinative, ambiguities in statutes are construed in favor of aliens in removal. *INS v. Cardoza–Fonse-*

---

**7.** One ounce is 28.35 grams.

*ca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *INS v. Errico,* 385 U.S. 214, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966) ("We resolve the doubts in favor of [the alien] because deportation is a drastic measure"). Accordingly, like the Second and Third Circuits, we conclude that widely disparate immigration consequences due to differences in how states punish drug offenses "cannot be what Congress intended in establishing a 'uniform' immigration law." *Gerbier,* 280 F.3d at 312.

## IV. CONCLUSION

In summary, we hold that a state drug offense is not an aggravated felony for immigration purposes unless it is punishable as a felony under the CSA or other federal drug laws named in the definition of "drug trafficking crime," or is a crime involving a trafficking element. Cazarez–Gutierrez's offense, possession of methamphetamine, is not punishable as a felony under federal law and involves no trafficking element. Therefore, his offense is not an aggravated felony for immigration purposes, and the BIA erred in finding Cazarez–Gutierrez statutorily ineligible for cancellation of removal. Accordingly, we grant his petition and remand to the BIA to consider whether the IJ abused his discretion by granting Cazarez–Gutierrez cancellation of removal.

**PETITION GRANTED and REMANDED.**